Merle C. FOWLER, Appellant,

v.

Joseph A. CALIFANO, Jr., Secretary of
Health, Education, and
Welfare, Appellee.

No. 78–2185.

United States Court of Appeals,
Third Circuit.

Argued Feb. 23, 1979.

Decided April 10, 1979.

J. Howard Womsley (argued), Ryan & Bowser, Pittsburgh, Pa., for appellant.

Robert J. Cindrich, U. S. Atty., Craig R. McKay, Asst. U. S. Atty., Pittsburgh, Pa., Stephanie W. Naidoff, Regional Atty., M. Michael Leonard (argued), Asst. Regional Atty., Dept. of Health, Education, and Welfare, Philadelphia, Pa., for appellee.

Before HUNTER and WEIS, Circuit Judges and MARKEY, Chief Judge of the Court of Customs and Patent Appeals.*

## OPINION OF THE COURT

WEIS, Circuit Judge.

Claimant Merle Fowler is presently disabled by multiple sclerosis. Hampered by the necessity to establish an onset date within her coverage period, she has been unsuccessful in securing disability benefits from the Social Security Administration. Difficulties in proof abound, for the disease is a progressive one, the initial date of disability is seldom easy to determine, and periods of remission are common. And as if these problems were not enough, they were compounded by the Department of Health, Education, and Welfare's loss or destruction of critical records relating to claimant's first application for benefits. After a thorough review of the case, we conclude the HEW determination that no disability existed on the last day of coverage, June 30, 1966 is not supported by the evidence. Finding adequate evidence to reconstruct the missing record, we remand to the Secretary for consideration of Miss Fowler's request to reopen because of error on the record.

From the early 1950's on, Miss Fowler worked for various medical schools as a recordkeeper, secretary, and nurse. From 1963 to 1967, she was employed at the University of California at Los Angeles Medical Center. That institution did not participate in the Social Security program and her coverage earned while at other jobs terminated on June 30, 1966. Claimant's testimony before the administrative law judge revealed that it was during her service at U.C.L.A. that she began to encounter increasingly serious and bizarre physical disabilities. These difficulties included: problems in maintaining her balance that were severe enough to attract accusations of being intoxicated or under the influence of drugs; a four-week period during which she had to crawl because of an inability to stand; slurred speech resulting in communication problems with coworkers and patients; difficulty in typing. Miss Fowler was forced to use up all of her vacation time as well as her sick leave because of her illness. Additionally, she often found it necessary to rest over long lunch hours.

Miss Fowler continued to cling to her employment because she was living alone and was her own sole means of support. In February 1967, her condition was such that she could no longer be retained even by the most sympathetic and understanding employer. At about this time her condition was finally diagnosed as multiple sclerosis. She then went to live with her sister in Florida, and for a period of about a year and a half was both bedridden and mentally disoriented. During this interval, her sister filed a disability claim for her with the

* Honorable Howard T. Markey, Chief Judge of the United States Court of Customs and Patent Appeals, Washington, D.C., sitting by designation.

Social Security Administration, which was rejected, according to the sister, because the claimant did not have enough quarters of coverage.

The claimant enjoyed a period of remission from 1970 to 1973 when she was able to obtain limited employment in Pittsburgh, Pennsylvania, but thereafter her disease was again disabling. She filed for disability benefits on March 25, 1974, alleging disability from 1965. After an initial denial, the Secretary referred her case for disability evaluation to the Pennsylvania Bureau of Vocational Rehabilitation. That agency, based on information that severe symptoms were observable at some time in 1965 or early 1966, concluded that a closed period of disability was established between December 31, 1965 and February 1, 1970, when remission occurred. The Secretary, however, disallowed the payment of any benefit because the 1974 claim had been filed more than twelve months after the first period of disability had ceased in 1970. *See* 42 U.S.C. § 416(i)(2)(E). The claimant then requested a hearing, asserting that the 1968 claim filed by her sister had been erroneously denied and should be reopened. On the basis of the Bureau of Vocational Rehabilitation disability evaluation, claimant believed she was entitled to benefits for the 1965–1970 period. The ALJ, however, bypassed the 1968 claim issue altogether, finding instead that there had been no disability before June 30, 1966. The Appeals Council affirmed and the district court ruled there was substantial evidence supporting the Secretary's decision.

Looking first to the determination of the onset of disability, we conclude that there is not substantial evidence to support the ALJ's decision.

The claimant's description of her difficulties in the 1965–1966 period is convincing. She tried desperately to hold her job and exerted extraordinary efforts to cope with her disability. Her case did not rely upon her testimony alone but was supported by several statements from persons familiar with her at that time. A letter from Justine Walker, a coworker, was received into evidence and corroborated Miss Fowler's account of her difficulties. In addition, the detailed statements of two physicians who were aware of her condition during the period were made part of the record. Dr. Donald A. Adams, her treating physician, stated:

"[B]eyond question . . . she had multiple sclerosis dating back probably to 1965 and early 1966."

He said further:

"were she an employee of mine during late 1965 and early 1966 I would have had no other alternative except to terminate her due to her illness even though the consequences would have been that she would be unable to procure another job."

Dr. Jack A. Cannon, her employer in 1965, said that she should not have been working at that time.

"However, in considering what would happen to her if I did recommend that she be terminated, I had to realize that she would be unable to secure another position because of the problems, and that I could not recommend her for other employment based on her mental and physical condition."

Her physician at the time of the hearing, Dr. Lawrence D. Ellis, came to a similar opinion after reviewing Miss Fowler's records. He believed she was unable to engage in substantial gainful employment for a period beginning in late 1965. Moreover, the Bureau of Vocational Rehabilitation report, which, after careful study, found that disability existed as of December 31, 1965, was totally ignored in the ALJ's decision. The ALJ did not refer to any of the foregoing evidence, but merely summarized the medical reports relating to the disability period prior to June 30, 1966 as giving "no indication of severe and protracted disability prior to that date."

▆ This conclusory statement misses the mark on several counts. It fails to observe the appropriate legal standard, whether claimant is unable "to engage in any substantial gainful activity," 42 U.S.C. §§ 416(i)(1), 423(d)(1), and substitutes a far

harsher requirement. Additionally, the statement is directly contrary to the evidence submitted by the physicians familiar with claimant's condition. In fact, it is not supported by any medical opinion in this case. As we commented in *Gober v. Matthews*, 574 F.2d 772, 777 (3d Cir. 1978), an ALJ is not free to set his own expertise against that of physicians who present competent medical evidence.

■ The ALJ's opinion drew some unsupported inferences from the fact that claimant had been employed by physicians. The ALJ commented, "it is axiomatic that physicians take care of their own." The thrust of this remark is somewhat obscure because the record indicates the employers did take care of claimant by retaining her for a longer period than that which could be justified by her failing health. To that extent, the "axiom" tends to support Miss Fowler's claim that she continued to work even though physically incapable of performing the tasks demanded of her. Moreover, her employment after the cut-off date does not foreclose an award of benefits since disability "turns on whether she was disabled within the meaning of the Act notwithstanding the fact that she actually did work." *Stark v. Weinberger*, 497 F.2d 1092, 1100 (7th Cir. 1974).[1]

■ We find it particularly puzzling that the ALJ ignored the findings on disability reached by the state agency to which the Secretary had referred the matter. That expert body made a determination of disability on less evidence than was submitted to the ALJ. Although findings by other agencies are not binding on the Secretary, they are entitled to weight and must be considered. We said in an early case that the evaluation of disability by the Veterans Administration was critically relevant and material in a parallel Social Security case. *Pulaski v. Finch*, 415 F.2d 613, 618 (3d Cir. 1969). *See also Cutler v. Weinberger*, 516 F.2d 1282, 1286 (2d Cir. 1975); *DePaepe v.*

*Richardson*, 464 F.2d 92, 101 (5th Cir. 1972). And in a case quite similar to the one at bar, *Dunbar v. Califano*, 454 F.Supp. 1261 (W.D.N.Y.1978), the court expressed disapproval over an ALJ's failure to consider the disability finding of a state agency consulted by the Secretary.

■ After careful review of the record, we are convinced that the overwhelming evidence supports a finding of disability during the critical period, and the Secretary's determination to the contrary cannot stand. Indeed, absent the question of timely filing, we would enter judgment for the plaintiff at this point.

We must now, then, consider the effect of the 1968 claim. The 1974 application would not be timely if it constituted the original claim because it was filed more than twelve months after the closed disability period terminated in 1970. The claimant, however, asked that the 1974 claim be considered as one requesting a reopening of the original application filed on her behalf some six years earlier.

20 C.F.R. § 404.957(c)(8) provides that a final decision may be reopened at any time "for the purpose of correcting clerical error or error on the face of the evidence on which such determination or decision was based." As the Court of Appeals for the Eighth Circuit said in *Lauritzen v. Weinberger*, 514 F.2d 561, 563 (8th Cir. 1975), the question for the Social Security Administration on any claim for reopening is whether an injustice has been done to a claimant, or whether there is manifest error in the record. This inquiry, in opting for a flexible approach to the doctrine of res judicata, supports the view expressed by this court in *Coulter v. Weinberger*, 527 F.2d 224, 228 (3d Cir. 1975):

> "[S]trict adherence to res judicata's restrictive effects is not particularly appropriate in an administrative setting where the claimants are generally not represented by counsel and the process is not based on adversarial concepts."

---

1. Miss Fowler had experienced a nervous breakdown during the time she attended nursing school and her employer was aware of that. She testified that she was particularly unwilling to disclose her difficulties to her employer because he might consider these symptoms to be a recurrence of her mental condition and recommend institutionalization.

As luck would have it, however, the Social Security records containing Miss Fowler's 1968 claim have been lost, destroyed, or consigned to a state of eternally suspended animation because of an inability to retrieve the information from the data storage system. The precise reason is not entirely clear from the record, but the end result is—Social Security no longer has the documents or copies containing the application and denial of the 1968 claim. In the Administration view expressed on appeal, this mishap simplifies the matter: since there is no record of the 1968 claim, there is no evidence from which it can be determined that error exists. Plaintiff argues it is unconscionable for the Administration to take a position that in effect permits it to profit by its own errors and we are inclined to agree. The Social Security Act is to be interpreted liberally to effectuate its beneficent purposes. *See, e.g., Hess v. Secretary of HEW*, 497 F.2d 837, 840 (3d Cir. 1974). In this case, the claimant unquestionably is disabled, and though she desires to be self-supporting as soon as and as long as she is able, she should be awarded that which is due her under the law during periods of exacerbation.

The claimant produced evidence, moreover, that would be sufficient to reconstruct her lost records. She produced her Social Security card with the word "denied" stamped upon it, and contended that it is Administration practice to stamp a card in this fashion when a claim is denied for lack of coverage. She submitted the affidavits of her sister and brother-in-law which asserted that a claim was filed on Miss Fowler's behalf in 1968 at a time when she was unable to supply necessary information to her sister. These affidavits state that the claim was denied because of lack of quarters. There is also in the file a letter from an official of the Social Security Administration saying that

> "the decision on the prior claim mentioned became final upon expiration of the appeal period, and the records were sent to the Federal Records Center for storage. A thorough and complete search reveals that the records are not there and they have not been found elsewhere."

It seems reasonable to assume that Miss Fowler's sister, being unfamiliar with all the details of claimant's employment history and illness, was probably unable to furnish the Social Security Administration with sufficient data, resulting in the agency's failure to properly calculate the coverage period. In any event, it is clear that in 1968 the claimant was entitled to disability payments.

The Secretary has not ruled upon the application for reopening since the necessity for that decision was foreclosed by the ALJ's determination of nondisability. The issue now, however, is squarely presented by the record and, accordingly, we must remand to the Secretary for his determination of whether to reopen in view of the injustice that has been visited upon the claimant and the difficulty of proof existing through no fault of her own.

The judgment of the district court will be reversed, and the case will be remanded with instructions to remand the record to the Secretary for further proceedings consistent with this opinion.