Charles PURTER, Appellant,

v.

Margaret HECKLER, Secretary Dept. of Health and Human Services.

No. 84–3544.

United States Court of Appeals, Third Circuit.

Submitted Pursuant to Third Circuit Rule 12(6) March 18, 1985.

Decided Aug. 16, 1985.

Kathleen R. Mulligan, Neighborhood Legal Services Assn., Pittsburgh, Pa., for appellant.

John E. Newton, Jr., DHHS/OGC/Office of the Regional Atty., Philadelphia, Pa., for appellee.

Before SEITZ and HIGGINBOTHAM, Circuit Judges, and GILES, District Judge[*].

[*] Honorable James T. Giles, United States District Court for the Eastern District of Pennsylvania, sitting by designation.

## OPINION OF THE COURT

GILES, J., District Judge.

Charles Purter filed an action in the district court to review his claim for disability benefits under 42 U.S.C. § 401 *et seq.* (1982), and for supplemental security income benefits (SSI), *id.* § 1381 *et seq.* (1982), both of which were denied by the Secretary of Health and Human Services (Secretary). Under consideration was plaintiff's third application for benefits. The court below adopted the report of the magistrate recommending that the action be dismissed based on the principle of *res judicata.* Accordingly, summary judgment was entered in favor of the Secretary.

On appeal, we are asked to decide whether the district court erred in applying the doctrine of *res judicata,* and if so, whether the Secretary's final decision denying Purter's third application for benefits is supported by substantial evidence in the record as a whole. Because we find that the lower court improperly applied *res judicata* principles to bar Purter's claim and the Secretary applied an improper legal standard to determine whether he was disabled under the Social Security Act (Act) due to alcoholism, we shall vacate the summary judgment order with directions to remand the matter to the district court with directions to, in turn, remand to the Secretary for further proceedings consistent with this opinion.

### I.

Purter, now a forty-five year old man, has only a ninth-grade education. He worked as a laborer in a box spring factory until he was laid off in December 1975 due to a combination of physical ailments. Claimant has not returned to his former place of work nor obtained other gainful employment.

He first applied for disability and SSI benefits on June 3, 1977, alleging that he became disabled in December 1975 as the result of high blood pressure, seizures and

back problems. His initial claim was disallowed by the Social Security Administration in August 1977, and again upon reconsideration in November 1977. Purter then requested a hearing before an Administrative Law Judge (ALJ) in January 1978.

The ALJ reviewed a record replete with medical diagnoses of excessive alcohol use and other persuasive evidence that claimant's physical condition was steadily deteriorating. Purter entered Presbyterian University Hospital (Presbyterian) on November 14, 1974 suffering from a seizure disorder. The attending physician found that Purter's seizure disorder and high blood pressure were complicated by his ingestion of alcohol. The doctor described claimant as "a heavy drinker all his life" and noted that Purter had been drinking his usual per diem quota of two pints of alcohol on the day of his admission. Purter promised to discontinue his drinking habits, was given medication to control his seizures and was released from the hospital.

Three months later, he entered St. Francis General Hospital (St. Francis), seeking relief from multiple seizures. On intake, the primary diagnosis was "chronic alcoholism," with a seizure disorder secondary to the same. Plaintiff was discharged with instructions to take his medications and advised to enter that hospital's "Alcoholic Clinic."

In May 1975, plaintiff was admitted to St. Francis for a three-day stay resulting from continued seizures. Purter's condition was found in part attributable to "ethanol" abuse. These records note Purter's history of daily alcohol ingestion and his failure to take his prescribed seizure and high blood pressure medications.

On May 13, 1977, police found Purter lying in a pool of blood suffering from a stab wound in the back. Purter was taken to Presbyterian where medical, records reveal that he was intoxicated upon admission.

Two physicians to whom Purter was referred for examination by the state disability board submitted reports. Dr. Goldstein, a neurologist, filed a report which contains Purter's admission that he was a regular drinker and promise to "cut down on his ... intake." Dr. Norman Davis' examination confirmed the earlier diagnoses contained in claimant's medical history: seizure disorder, high blood pressure and chronic alcoholism. Notably, his diagnosis linked Purter's seizures to his consumption of alcohol. Dr. Goldstein emphasized that, although Purter's long-term prognosis was bleak, it could be substantially improved with abstention from alcohol.

On April 25, 1978, the ALJ nevertheless concluded that claimant did not suffer from any disabling impairment. The ALJ found that the seizure disorder was controllable with proper use of medication. Further, he concluded that plaintiff's abuse of alcohol was not disabling because it had not resulted in any organ damage nor manifested itself in any other significant mental impairment.

By the time plaintiff filed his second application for benefits, March 29, 1979, the symptomology indicated in his records had only marginally evolved. Again, Purter's chief complaints were high blood pressure and seizure disorder. He specifically denied alcohol abuse, but admitted to memory loss. Plaintiff's second claim was disallowed by the state disability agency on June 15, 1979, and again upon reconsideration on September 26, 1979.

In support of his second application, Purter submitted hospital records filed with his first application and supplied additional medical data. Central Medical Health Services (Central) records covering the period from August 1975 to July 1978 show that he had been treated there on two occasions for ailments indirectly related to his alleged disabilities: once for pneumonia, then for lacerations resulting from being hit by a bottle. Purter was also admitted to Central on another occasion suffering from a seizure. He had failed to take his seizure medication for six months. He was referred back to St. Francis for further care.

Purter entered St. Francis at least six times from August 11, 1978 to February 8, 1980, suffering from seizures of varying degrees. His seizures were found to be related to his failure to comply with the prescribed medical regimen. Failure to follow the prescribed medical regimen was, in turn, linked to his primary disorder—alcoholism. An attending nurse's notes show that Purter was genuinely confused over the nature of his condition. He was effectively substituting alcoholic beverages for seizure medication.

At a hearing before an ALJ on February 29, 1980, Purter testified that he had been a heavy drinker, but had stopped drinking alcohol on the advice of his doctors. He later contradicted this testimony, remarking that he drank on occasion, and had even taken a drink on the previous evening.

On April 1, 1980, the ALJ found that there was no new evidence or clear error in the prior decision by the agency to warrant a reopening of the earlier application. Further, he concluded that since the prior decision involved the same facts and the same issues, the April 25, 1978 decision of the ALJ was *res judicata* as to the evidence up to that April 1978 date. The ALJ then reviewed the record evidence which was not precluded by *res judicata*. He found that Purter was disabled when drinking, but that he could control his disabling conditions with medication if he discontinued the use of alcohol.

On June 4, 1980, Purter filed a petition for reconsideration of the ALJ's decision denying benefits. Purter's attorney argued that his inability to adhere to the prescribed medical treatment was the result of alcoholism. Claimant submitted two affidavits, including his own sworn statement, which confirmed his attendance at Alcoholic's Anonymous in May 1980. The Appeals Council found that he was not addicted to alcohol and denied Purter's request for benefits.

Purter then challenged the Secretary's decision as to the second application for benefits in federal district court. Adopting the opinion of the magistrate to whom the case was referred, the court initially held that it was without jurisdiction to review the ALJ's application of administrative *res judicata.* It nevertheless proceeded to review the *entire* record on the merits.

Finding the evidence on the issue of alcoholism ambiguous, the district court held that the ALJ did not err in failing to make a specific finding as to the effect of alcoholism on his other impairments. Despite the presence of multiple diagnoses of claimant's "chronic alcoholism," the court found that there was "no report by any physician indicating that plaintiff was unable to control his drinking." The court also found three other facts compelling. First, although several doctors had found his seizure disorder causally related to his drinking, he was never actually treated for alcoholism. It erroneously believed that the latest medical data made no mention of alcohol abuse.[1] Second, based upon the sworn statements filed with the Appeals Council, the court concluded that Purter likely had the capacity to control his drinking. Finally, the court believed that Purter's own statement that he had discontinued drinking alcohol and his concomitant failure to state affirmatively that he was an alcoholic was persuasive evidence that he was not an alcoholic. Accordingly, the court found no disabling impairment from April 1978 to the time of the court's decision and granted summary judgment in favor of the Secretary. No appeal was taken from that decision.

On July 16, 1981, Purter filed a third application for benefits. Claimant not only alleged those impairments listed in his two prior applications, but also, specifically claimed to be a chronic alcoholic. Although he stated in his prior application

---

**1.** Dr. Johnson, a neurologist who examined Purter at the agency's behest, submitted a report finding Purter's condition rather unremarkable. Although the magistrate indicated that Dr. Johnson's report was "the latest medical data on the plaintiff," this conclusion is faulty. The ALJ had before him evidence of reports filed in 1980 reflecting plaintiff's chronic alcohol abuse and noting his use of alcohol as a substitute for medication.

that he had stopped drinking, he stated in his third application that he "can't help the drinking." While he admitted that he had been a "heavy drinker" from age 19, he stated that he had cut down on his consumption due to the severity of his headaches. Claimant's request for benefits was denied by the state agency on September 4, 1981. A lack of medical evidence, coupled with plaintiff's own ambiguous statements, formed the basis for a finding that plaintiff was not disabled prior to June 30, 1980, the last date on which he was insured under the Act.[2] Purter's third application was denied again upon reconsideration because of lack of medical evidence as to any of the alleged impairments and his failure to attend consultative examinations.[3]

On July 12, 1982, Purter filed a request for a hearing before an ALJ. In his hearing request, claimant indicated that he had attended two hospital clinics designed respectively to treat the problems of seizure disorder and alcoholism. An ALJ granted Purter's request and scheduled a hearing for February 18, 1983. In a rather brief and superficial exchange between Purter and the ALJ, evidence of Purter's confused state of mind and reluctance to face his alcohol problem was very clear. While he stated that he quit drinking in November, that period of abstinence was short-lived. Specifically, it was less than a month if at all. Purter testified that he did not drink every day, and that his urge to drink came and went. However, in the same breath he stated, "I need a drink every day." Symptomatically, there was evidence that he had the alcohol shakes. When he got the shakes, he drank in order to eliminate them. The interrelationship between his ingestion of alcohol and his other physical and mental problems was also apparent in the following statement: "I listen to doctors [who tell me not to drink and to take the prescribed medications], but I need one

drink. If they don't help me, I have the second drink." His personal statements were buttressed by the testimony of Joanne Riley, his companion, who stated that Purter drank daily even before or after he attended meetings of Alcoholics Anonymous.

In addition, the ALJ reviewed reports from two doctors and medical records documenting his visits to St. Francis dating from October 1980. A report by Dr. Jack M. Ulrich, dated November 11, 1981, opined that the seizures or "rum fits" and possibly his hypertension, were caused by Purter's consumption of alcohol.

Dr. Alan J. Barnett filed a rather conclusory diagnosis dated April 23, 1982. His conclusions were reached without the benefit of claimant's prior medical records at St. Francis and are unsupported by any clinical findings. In effect, he reiterated plaintiff's complaints: leg cramps, seizures and alcohol and smoking abuse. He indicated that the leg cramps may have been related to alcohol abuse.

The St. Francis records show that although Purter was repeatedly told to stop drinking, he nevertheless continued his abuse of alcohol. He was found to be a "chronic alcoholic" unable to comply with doctor's orders. When he did not drink, his other conditions lessened or disappeared. Further, when he was drinking, lower levels of medication were found in his blood stream.

On April 13, 1983, Purter was admitted to St. Francis complaining of alcohol addiction. As recorded by an attending physician. Purter "came for help" with his alcohol problem. Upon his intake, Purter admitted to 15–20 years of drinking whiskey and wine. He stated that he "needed a drink" and that "a drink makes him feel better." The attendant noted that Purter

2. Plaintiff supplemented his third application for SSI benefits with the report of Dr. Jack M. Ulrich. This report revealed chronic alcoholism with high blood pressure and a seizure disorder secondary to alcohol abuse. Despite this evidence, the Secretary denied Purter's application for failure to attend consultative exams.

3. The administration remarked that it made numerous efforts to contact Purter without success. The agency failed to note that he had informed the agency that he had no phone when his third application was filed.

had been arrested five or six times for public intoxication. The intake report also noted Purter's apparent inability to understand the purposes or benefits of Alcoholics Anonymous. Although Purter began the Alcoholics Anonymous detoxification program, he voluntarily left the hospital prior to complete withdrawal.

The ALJ concluded that none of Purter's impairments were severe enough to be disabling because there was no end-organ damage to warrant a finding that either alcoholism or hypertension was disabling. Further, asserting reliance upon an unspecified neurological exam and other unidentified data, the ALJ concluded that Purter's seizure disorder was controllable by medication. Although the ALJ found that there was no "combination of impairments" which were disabling, he made no finding as to the interrelationship between the alleged medical impairments.

On June 2, 1983, Purter requested review of the adverse decision of the ALJ. The Appeals Council denied the request on July 18, 1983. Subsequent to this decision, the Appeals Council received a brief from Purter's counsel documenting Purter's history of alcohol abuse with citations to the entire record dating from 1975. The Appeals Council reaffirmed the ALJ's decision.

On September 19, 1983, Purter challenged the final decision of the Secretary denying him disability and SSI benefits in the district court. On July 27, 1984, the magistrate to whom the case had been referred, recommended summary judgment in favor of the Secretary. The magistrate found that the prior district court opinion affirming the Secretary's denial of Purter's second application for benefits was *res judicata* up until the time of that decision. Since that decision was handed down on May 21, 1981 and Purter last met the special earnings requirements under the Act on June 30, 1980, the magistrate concluded that any showing of disability subsequent to the latter date would not entitle plaintiff to benefits.[4] The trial court adopted the opinion of the magistrate and summarily dismissed Purter's third application for disability and SSI benefits without reviewing the merits of the ALJ's determination.

## II.

### A. Res Judicata

*Res judicata*, or claim preclusion,[5] is a court-created rule that is de-

---

4. The parties disagree over the date used by the district court as the date up to which its previous decision constitutes *res judicata*. The Secretary argues that the district court, by adopting the opinion of the magistrate, concluded that the date of the final decision of the Secretary denying Purter's second claim for benefits was the date up until which all matters previously adjudicated were *res judicata*. Purter, however, urges that the district court erred in using the date of its earlier judicial determination as the trigger date. He suggests that the date of the ALJ's denial of benefits in April 1980 should be the appropriate date for *res judicata* purposes. This would in effect create a window period from April 1980 to June 30, 1980 when Purter could have established his entitlement to benefits.

We find that the ALJ's denial was not the final decision of the Secretary on the merits. The Appeals Council took new evidence. Hence, it cannot, as a matter of law, be the applicable date. Therefore, it is of no consequence that the trial court may have erred in using the date of its earlier determination, since either that date or the date of the Appeals Council decision was *after* June 30, 1980, the last date

claimant met the special earnings requirement. *See Lyle v. Secretary of Health and Human Services*, 700 F.2d 566, 567 (9th Cir. 1983).

5. The Supreme Court has stated that the doctrine of *res judicata* consists of two preclusion concepts: issue preclusion and claim preclusion. Claim preclusion refers to the preclusive effect of a judgment in barring relitigation of the same causes of action. Issue preclusion or collateral estoppel, which was intended to be a more narrow application of *res judicata*, refers to the effect of a judgment in foreclosing relitigation of all matters that were actually and necessarily determined in a prior suit. *Migra v. Warren City School Dist. Bd. of Educ.*, 465 U.S. 75, 104 S.Ct. 892, 894 n. 1, 79 L.Ed.2d 56 (1984), *cited in United States v. Athlone Indus., Inc.*, 746 F.2d 977, 983 n. 4 (3d Cir.1984).

The differences between claim preclusion and issue preclusion in many cases may be more fiction than fact. In *Charter Oak Fire Ins. Co. v. Sumitomo Marine & Fire Ins. Co., Ltd.*, 750 F.2d 267 (3d Cir.1984), this court recently remarked that the federal common law pertaining to collateral estoppel has been inter-

signed to draw a line between the meritorious claim on the one hand and the vexatious, repetitious and needless claim on the other hand. *See* 1B J. Moore, J. Lucas & T. Currier, *Moore's Federal Practice* ¶ 0.405[1] at 186 (2d ed. 1984). This rule reflects the need for courts to put an end to litigation. When one has been given the opportunity to fully present his case in a court and the contested issue is decided against him, "he may not later renew the litigation in another court." *Heiser v. Woodruff*, 327 U.S. 726, 733, 66 S.Ct. 853, 856, 90 L.Ed. 970 (1946). Although *res judicata* is a rule of finality strictly enforced and liberally applied, *Hart Steel Co. v. Railroad Supply Co.*, 244 U.S. 294, 299, 37 S.Ct. 506, 508, 61 L.Ed. 1148 (1917), *cited in Federated Department Stores v. Moitie*, 452 U.S. 394, 401, 101 S.Ct. 2424, 2429, 69 L.Ed.2d 103 (1981), it is moreover a rule of "fundamental and substantial justice, of public policy and private peace, ..." rather than a technical rule. *Id.* 244 U.S. at 299, 37 S.Ct. at 508. Because of the dangers of a wooden application of *res judicata, Jeter v. Hewitt*, 63 U.S. (22 How.) 352, 364, 16 L.Ed. 345 (1859) (in some cases, harsh results may be visited by a rule of public policy which "renders white that which is black, and straight that which is crooked...."), the Supreme Court has emphasized the importance of careful judicial inquiry prior to its enforcement. *Brown v. Felsen*, 442 U.S. 127, 132, 99 S.Ct. 2205, 2209, 60 L.Ed.2d 767 (1979). The ease and efficiency of *res judicata* as a means of quickly avoiding an evaluation of the merits of a plaintiff's claim does not imply that the decision to apply the doctrine should be either facile or hasty.

preted by the courts so broadly that the doctrine of issue preclusion is "virtually indistinguishable from *res judicata." Id.* at 271 n. 2. An expansive definition of "issue" may be used to encompass any legal theory or factual assertion put forward in a second action that is related to the subject matter and relevant to the issues actually adjudicated in the initial action. *See* J. Moore, J. Lucas & T. Currier, 1B *Moore's Federal Practice* ¶ 0.443[2] at 760–61 (3d ed. 1984).

■ In order to raise successfully the defense of *res judicata*, the party asserting the defense must demonstrate that (1) there has been a final judgment on the merits in a prior suit; (2) the prior suit involves the same parties or their privies and (3) the subsequent suit is based on the same causes of action. *United States v. Athlone Industries, Inc.*, 746 F.2d 977, 983 (3d Cir.1984). While the district court properly concluded that there had been a prior final judgment on the merits and there was identity of the parties, the court failed to perform the relevant inquiry into whether Purter's successive claims were "the same cause of action." This court has suggested three considerations relevant to the inquiry into whether there is identity of causes of action: "(1) whether the acts complained of and the demand for relief are the same (that is, whether the wrong for which redress is sought is the same in both actions ....); (2) whether the theory of recovery is the same; (3) whether the witnesses and documents necessary at trial are the same (that is, whether the same evidence necessary to maintain the second action would have been sufficient to support the first) ... and (4) whether the material facts alleged are the same." *Id.* (citations omitted).

Before applying *res judicata*, the district court failed to inquire into whether Purter's successive claims were the same. *See McGowen v. Harris*, 666 F.2d 60, 67 (4th Cir.1981); *Farley v. Califano*, 599 F.2d 606, 608 n. 4 (4th Cir.1979). Purter specifically claimed alcoholism as a disabling condition in his third application and introduced new and material evidence on this issue. In prior claims, alcoholism was discussed in the context of claimant's other

In the instant case, the lower court neither referred to nor distinguished between these two types of preclusion. The district court applied *res judicata* to Purter's third claim for benefits to preclude review of any issue raised by facts presented in his prior applications. For our purposes, we refer to the more expansive definition of *res judicata*, or claim preclusion, which was adopted *sub silentio* by the district court.

alleged impairments. However, the newly-presented evidence isolated alcoholism as a potentially debilitating injury for the first time. In light of the alcoholism claim, the entire record took on new meaning. The wrong for which recovery is sought, the theory of recovery and the material evidence necessary to sustain Purter's third claim for benefits became facially distinct from the earlier applications.

■ Assuming *arguendo* that Purter's third claim for benefits was the same claim as that previously barred by judicial decision, the district court's inquiry should not have ended. Whether principles of judicial *res judicata* should have been applied to bar Purter's current claim for benefits should not have been viewed in isolation from the administrative process through which the claim ultimately reached the court.

■ The Supreme Court has held that, owing to the similarity in issues facing both judicial and quasi-judicial officers, *res judicata* principles apply to administrative as well as judicial adjudications. *United States v. Utah Construction and Mining Co.*, 384 U.S. 394, 421–22, 86 S.Ct. 1545, 1559–60, 16 L.Ed.2d 642 (1966). This court has previously recognized the importance in providing a measure of finality to administrative determinations, and more particularly, to decisions of the Social Security Administration. *See, e.g., Coulter v. Weinberger*, 527 F.2d 224, 228 (3d Cir.1975); *Domozik v. Cohen*, 413 F.2d 5, 7–8 (3d Cir.1969). However, we have also ruled that when *res judicata* is applied in the context of administrative proceedings under the Act, it is not encrusted with the rigid finality that characterizes its application in purely judicial proceedings. *Fowler*

*v. Califano*, 596 F.2d 600, 603–04 (3d Cir. 1979) (citing *Coulter, supra,* 527 F.2d at 228). *See also Lyle v. Secretary of Health and Human Services*, 700 F.2d 566, 568 n. 2 (9th Cir.1983); *Grose v. Cohen*, 406 F.2d 823, 824 (4th Cir.1969). Because claimants under the Act are generally without the assistance of counsel and are involved in a review process not safe-guarded by adversarial concepts, we recognized in *Coulter v. Weinberger*, 527 F.2d at 228, that we must take a flexible approach to the application of *res judicata* to decisions of the Secretary. Rigid enforcement of this precept must be tempered by fairness and equity, *e.g., Thompson v. Schweiker*, 665 F.2d 936, 940 (9th Cir.1982), and in accordance with the beneficent purposes of the Act.[6] *See Fowler*, 596 F.2d at 604.

Although the Act impliedly vests power in the Secretary to deny review of claims which have been previously denied on the merits through final administrative decision, *see* 42 U.S.C. § 405(g), (h) (1982), her power is not without limitation. The Secretary may only apply *res judicata* to preclude a subsequent claim for benefits where the "same" claimant has filed a previous application based on the "same" issues and where such prior determination has become final by virtue of administrative or judicial action. 20 C.F.R. § 404.-957(c)(1) (1984). However, the Secretary has promulgated regulations which allow her to refuse to apply claim preclusion where it would be inequitable to do so. Where an applicant files the same claim for benefits after a final administrative or judicial decision on the merits, the initial claim may be reopened and reconsidered along with any new evidence provided in the subsequent application for benefits.[7] The gov-

---

6. *See also* K. Davis, *Administrative Law Treatise* § 21:4, at 57 (2d ed. 1983) (strict adherence to the doctrine of *res judicata* may be inconsistent with the purposes of the Act).

7. The equitable exceptions incorporated into the administrative review process under the Act roughly parallel exceptions to judicial *res judicata* carved out by the Restatement (Second) of Judgments (1980) and subscribed to by Professor Kenneth Culp Davis. *See* K. Davis, *supra,*

§ 21:4, at 57 (citing Restatement (Second) of Judgments (1980)). Section 73 of the Second Restatement recognizes the need to avoid or modify judgments where later developments would cause inequitable results if continued effect were given to a prior judgment. Specifically, section 73 provides for the setting aside or modification of a prior judgment in two circumstances: 1) where changed conditions warrant modification of a prior judgment subject to modification by its own terms or by applicable

erning regulations provide for the reopening of a prior determination within four years of the date of the "initial determination" where "new and material evidence is furnished." 20 C.F.R. §§ 404.988(b), 404.-989(a)(1) (1984). Similarly, a claim may be reopened within four years of the "initial determination" if "the evidence that was considered in making the determination or decision clearly shows on its face that an error was made." 20 C.F.R. §§ 404.988(b), 404.989(a)(3) (1984).[8]

■ Thus, the Social Security Administration has internal mechanisms designed to "modify or set aside" a prior judgment in two circumstances: first, where there has been a change of circumstances sufficient to merit reconsideration of its earlier decision to deny benefits in whole or in part, and second, where there is clear error on the face of the initial ruling which, if left unchanged, would cause a continuing, inequitable result. The Restatement (Second) of Judgments § 73(1) (1980) recognizes that res judicata may be inapplicable where a prior judgment, either administrative or judicial, is subject to modification by applicable law. In this case, the lower court erred in failing to recognize the interface between principles of judicial res judicata and the regulatory framework which directly modifies those principles under the Act. The district court was free to determine whether Purter's initial claims had been administratively reopened "either formally or by legal implication," irrespective of the determination made by the district court on claimant's second application for benefits. See McGowen, 666 F.2d at 66.

Appellant argues that, by receiving evidence and otherwise conducting a complete hearing on his final application, the ALJ waived the administration's right to assert the defense of res judicata and reopened the entire record for reconsideration of all claims. The Secretary counters, arguing that Purter's proper remedy was to appeal the earlier decision of the district court affirming the Secretary's denial of benefits under Purter's second application. Since Purter did not seek further review of the initial district court decision, the Secretary asserts that it is res judicata of any claim made in claimant's third application. In support of her argument, the Secretary refers to two decisions of this court. See Stauffer v. Califano, 693 F.2d 306 (3d Cir. 1982); Domozik v. Cohen, 413 F.2d 5 (3d Cir.1969).

■ In Stauffer v. Califano, we held that where an ALJ correctly determines that reopening of a previously adjudicated claim is barred by res judicata, the district court is without jurisdiction to review that decision. 693 F.2d at 307. We based our conclusion in Stauffer upon Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977), which held that section 405(g) limits judicial review to "final decisions of the Secretary made after a hearing." 430 U.S. at 108, 97 S.Ct. at 985 (citing 42 U.S.C. § 405(9)(b) (1970 & Supp. V)). Because the Secretary refused to reopen Stauffer's earlier application without holding a hearing,[9] we held that the Secre-

---

law and 2) where the change in circumstances is so great that it would be unjust to give res judicata effect to the prior judgment. Restatement (Second) of Judgments § 73(1), (2) (1980).

**8.** The regulations also provide that a claim may be reopened "at any time" to correct an error that appears on the face of the evidence that was considered when the "initial determination" was made. 20 C.F.R. § 404.988(c)(8) (1984). This latter provision, which allows for reopening at any time, appears to be more narrow than the textually-cited provisions. 20 C.F.R. §§ 404.988(b) and 404.989(a)(3) imply that legal determinations as well as factual determinations contained in the record may be reviewed under this provision. However, since we find

that plaintiff's third application was filed within four years of the initial denial of his first claim for benefits, compare (R at 138) with (R at 229, 242), we apply the textually-cited "good cause provision" and, therefore, need not distinguish between the scope of these two provisions.

**9.** More specifically, we concluded that, when the ALJ ordered a physical examination of the claimant, he had not reopened Stauffer's earlier claim because the examination was conducted solely to determine whether claimant's request for a reopening was meritorious. This conclusion does not preclude us from finding that an ALJ's actions constitute a de facto reopening of earlier claims where he subsequently denies

tary's decision in *Stauffer* was not a final order and hence, unreviewable. 693 F.2d at 307.

In the case before us, there is no evidence that the application was submitted or treated as a petition to reopen. Here, unlike in *Stauffer*, the Secretary made no specific denial of a request to reopen. To the contrary, the Secretary took new evidence and made an adverse ruling on the merits. The ALJ's decision to deny benefits upon Purter's final application was not based on *res judicata* grounds, but rather, on claimant's alleged failure to demonstrate a "severe impairment."

The Secretary also urges as controlling on the issue of *res judicata* this circuit's ruling in *Domozik v. Cohen*, 413 F.2d at 5. There, we held that the district court properly applied *res judicata* to bar further review of the Secretary's denial of the claimant's third request for benefits. *Id.* at 8. We allowed the application of administrative *res judicata* even though the hearing examiner had ruled on the merits of the application rather than simply refusing to review the claim on the grounds that *res judicata* precluded him from such review. *Id.* at 7. While the result in *Domozik* is appealing to the Secretary, she has failed to recognize several factors which distinguish it. In *Domozik*, the claimant made identical claims based on the same facts in each successive application for benefits. He was attempting to relitigate his first two claims by introducing a third claim without presenting any evidence which would have warranted a reopening of the earlier claims under the Secretary's regulations. *See id.* at 5–6. Domozik also failed to seek administrative reconsideration of the Secretary's earlier denials of his first two applications. Moreover, he failed to request a reopening of his claims within the time period prescribed for

any reopening based on "good cause." *See id.* at 7 & n. 8.

In the instant case, there was no dilatory behavior warranting a bar to Purter's claims. He timely presented compelling evidence tending to show that a reopening was appropriate.

 Purter urges this court to follow the reasoning of a line of cases which are consistent with our flexible approach to the application of *res judicata* to cases under the Act. Courts that have determined the scope of the reopening provisions contained in the Secretary's regulations have read these equitable exceptions to administrative *res judicata* to encompass certain decisions by the Secretary where she has not expressly stated that sufficient cause for reopening exists. Where a subsequent claim reveals evidence that would warrant a reopening of any earlier claims, and the Secretary has reviewed the entire claim and has rendered a final decision on the merits after a hearing, a reviewing court is not precluded from finding that a reopening has occurred. Refusal to apply "administrative" *res judicata* in a strictly technical fashion is consistent with this circuit's view that more significance should be placed on fairness in the administrative process than on the finality of administrative judgments. *See Fowler*, 596 F.2d at 603.[10]

In *Wilson v. Califano*, 580 F.2d 208 (6th Cir.1978), the Sixth Circuit held that where an ALJ had reviewed a claimant's second application for benefits for the entire period of alleged disability in light of new evidence and ruled on the merits of the claim where it could have applied *res judicata* to bar the entire claim, the Secretary had effectively reopened the original claim for reconsideration. *Id.* at 212 (citing 20 C.F.R. § 404.958(a)). Similarly, in *Farley*

---

benefits on the merits rather than ruling on the petition to reopen.

**10.** The decisions which are discussed below do not involve the review of a district court's application of *judicial res judicata*. However, as we previously noted, we cannot ignore the administrative process through which the instant claim

proceeded. The application of *res judicata* at any level of appellate review, be it administrative or judicial, is subject to the discretionary reopening provisions of the regulations drawn by the Secretary under the Act. *See McGowen*, 666 F.2d at 65.

*v. Califano*, 599 F.2d 606 (4th Cir.1979), the Fourth Circuit refused to imply an application of administrative *res judicata* in the absence of an express denial of a petition to reopen, holding that by ruling on the merits of the subsequent claim, the ALJ had reopened claimant's earlier application. *Id.* at 608.

In *McGowen v. Harris*, 666 F.2d 60, 65 (4th Cir.1981), the Fourth Circuit again addressed the parameters of administrative *res judicata*. The court reasoned that even if a subsequent application for benefits presents the same claim as the initial application for *res judicata* purposes, if it has been reconsidered on the merits to any extent at any administrative level, it is properly treated as having been reopened as a matter of administrative discretion under the Secretary's regulations. *Id.* at 65. The *McGowen* court found that when any claim is arguably the same as one earlier denied on the merits, the Secretary must by necessity look into all of the evidence presented in order to determine whether the claim, even if it is the same, should be reopened as a matter of administrative discretion. *Id.* at 67. Significantly, new evidence presented, even if "merely probative of the same claim," may be sufficiently material that, when combined with other factors, it justifies reopening. *Id.* Despite its apparent readiness to find a reopening under proper circumstances, the Fourth Circuit refused to treat the actions of the Secretary in that case as a reopening of McGowen's claim on the merits because the Secretary gave no indication that it was reviewing the entire series of claims.

Rather, the ALJ specifically denied the claim on *res judicata* grounds. *Id.* at 67–68.

In *Taylor for Peck v. Heckler*, 738 F.2d 1112, 1114–15 (10th Cir.1984), the Tenth Circuit followed the same approach. The claimant filed a second application for survivor benefits under the Act after her first application had been denied. *Id.* at 1114. Her second claim was denied by the ALJ as "duplicative." However, upon reconsideration, an ALJ conducted a full-scale hearing where a substantial number of exhibits were received into evidence. Following the hearing, the ALJ issued a standard decision evaluating all of the evidence before him, made findings of fact and denied benefits on the merits. *Id.* On appeal, the court found persuasive the fact the ALJ had not specifically declined to reopen the decision nor dismissed the application on the grounds of *res judicata*. *Id.* Citing to the Secretary's regulations permitting a reopening of a prior decision where "just cause exists," the court found a *de facto* reopening where the ALJ conducted a new hearing, considered all of the evidence and a formal decision was rendered. *Id.* Accordingly, the Tenth Circuit held that *res judicata* should not have been applied to bar review of the claim for benefits and, thus, the ALJ's decision should have been tested under the traditional substantial evidence inquiry. *Id.* at 1115.[11]

■ In reviewing the facts of this case in light of the applicable precedent, we note initially that neither party has addressed

---

**11.** The *Taylor* court relied in large measure on the reasoning and result reached in *Brown v. Heckler*, 565 F.Supp. 72 (E.D.Wisc.1983). This decision is of note because it demonstrates a logical analysis of the reopening dilemma by combining the reasoning of *Wilson, Farley,* and *McGowen*. In *Brown*, claimant's first application for disability and SSI benefits was denied by the Secretary. *Id.* at 73. Brown filed a second application for benefits one year later and thus, within the four-year period prescribed for reopening on the basis of good cause. *Id.* at 74. The ALJ, after reviewing all of the evidence, both from the first and second applications, denied claimant's application on the merits. *Id.* On the basis that the ALJ failed to

specifically dismiss the second action on *res judicata* grounds when he could have done so, the district court found a waiver of that defense. *Id.* Further, by ruling on all of the evidence and deciding the case on the merits, the ALJ permitted a reopening of the prior proceedings. *Id.* The court found a *de facto* reopening because claimant had presented new and material evidence to support his claim; that is, good cause had been shown for reopening. *Id. See also Reinhart v. Schweiker*, 590 F.Supp. 78, 80 (W.D.Mich.1984) (finding *de facto* reopening where ALJ reviewed second application after a hearing on the merits dating back to the alleged onset of disability contained in first application).

the threshold issue of whether Purter's failure explicitly to petition the Secretary for a reopening of his claim precludes this court from finding that his claim was reopened as a matter of law. There is no specific requirement that the claimant formally petition for a reopening of his earlier-filed claim. *See* 20 C.F.R. § 404.987(b) (1984) (claimant *may* ask that a determination or a decision to which he was a party be revised). Further, it is clear from his third application that Purter was seeking review of his prior claims. He expressly requested benefits dating back to December 1975 on the basis of a newly-alleged disability, alcoholism. Accordingly, we conclude that the fact that Purter's petition seeking reversal of his earlier claims for benefits was denominated a "third application" as opposed to a petition to reopen is not a bar to this court's ruling that the Secretary reopened his earlier claims.[12] *See Wilson v. Califano*, 580 F.2d 208, 212 (6th Cir.1978) (citing *Saldana v. Weinberger*, 421 F.Supp. 1127, 1130 (E.D.Pa. 1976)).

Here, not only should Purter's claim be construed as a petition to reopen, but the Secretary's actions in connection with that application were tantamount to a reopening. Consequently, the district court erred in failing to review the merits of Purter's successive claims for benefits.

Purter filed a request for a hearing following the administration's denial of his third application. (R at 272). When this request was reviewed, the ALJ was aware that claimant was last insured as of June 30, 1980, and that claimant's third application was filed after that date. (R at 29). If the ALJ believed that "good cause" to reopen Purter's previous claims was lacking, he had the power to refuse to review any new evidence presented and could have issued an unreviewable order under *Stauffer*. *See* 693 F.2d at 307.

Instead, the ALJ accorded claimant a full hearing on the entire claim as presented and received some thirty exhibits into evidence. The new hearing focused on the issue of alcoholism and its likely effect on claimant's other conditions. *See* (R at 33–50). It revealed a history of alcoholism and its interrelationship with Purter's other disabilities dating back to 1975. *See* (R at 305). Given medical evidence that Purter was first afflicted with the disease of alcoholism five years before the examination, it is implausible to conclude that the pre-1981 record was ignored.

Indeed, the ALJ issued a full opinion disposing of all of Purter's claims on the merits. The ALJ found no substantial evidence of a disabling condition dating from the alleged onset date, December 1975, and noted that he had reviewed "the entire record." He did not apply or mention *res judicata* principles but relied instead on the merits to dispose of Purter's claim. (R at 29).

On appeal to the Appeals Council, Purter submitted a brief discussing thoroughly the evidence contained in all three applications. *See* (R at 7–14). Based on the record and this additional brief, the Appeals Council found no disabling injury within claimant's period of insurance. (R at 4). Like the ALJ, the Appeals Council neither mentioned *res judicata* nor discussed whether it should reopen Purter's previous claims.

█ Moreover, in reviewing the merits of Purter's third claim for benefits, we find that there was "good cause" for reopening his earlier claims. The regulatory exceptions to administrative *res judicata* may be invoked where an injustice has been done to a claimant or where there is some manifest error in the record. *Lauritzen v. Weinberger*, 514 F.2d 561, 563 (8th Cir. 1975); *Coulter*, 527 F.2d at 231.[13] *See*

---

**12.** The procedure used by the Secretary in reviewing Purter's second claim is instructive here. The ALJ treated Purter's second application as a petition to reopen even though it was not denominated as such. Further, the ALJ expressly ruled that *res judicata* barred evidence

of claims dating after the first application for benefits. These actions serve to confirm our opinion that Purter's initial claims were reopened.

**13.** In *Coulter*, this court held that the claimant's four claims for benefits should be reopened as a

also, e.g., Thompson v. Schweiker, 665 F.2d at 941 (where ALJ's findings based on patently inadequate record, application of res judicata to that decision is tantamount to denial of due process). As discussed below, the Secretary consistently applied improper legal standards to the merits of each of claimant's three claims for benefits. Further, in his third application, Purter presented new and material evidence that merits a reconsideration of his earlier claims. In sum, there was good cause to open Purter's earlier claims.

Since the Secretary reconsidered Purter's claims on the merits and because there was "good cause" for reopening the earlier claims, we find that there was a de facto reopening of Purter's prior claims. Accordingly, the decision of the district court to apply res judicata principles was error and the court should have reviewed the merits of the ALJ's decision denying claimant's request for benefits.[14]

matter of law where the Secretary failed to apply relevant legal standards and failed to adequately develop a factual finding essential to a determination of disability. 527 F.2d at 231. In so holding, we noted the "unusual circumstances" of that case: the claimant's four applications "[had] been denied in a series of administrative actions marred by clerical errors and incomplete evaluations." Id. at 226. While there is a great similarity between the administrative irregularities present in Coulter and those present in the case before us, there is some doubt about the precedential value of Coulter. Given the Supreme Court's subsequent decision in Sanders, 430 U.S. at 108, 97 S.Ct. at 985, this court would have been without jurisdiction to review the order of the Secretary refusing to review Coulter's claim on res judicata grounds. See 527 F.2d at 227–28.

14. Notwithstanding its failure to examine the reopening provisions, the district court erroneously applied the doctrine of res judicata to bar Purter's claim for SSI benefits. The special earnings requirement used to bar review of Purter's third application is irrelevant when determining eligibility for SSI benefits. See 42 U.S.C. § 1382(a) (1983). There is no insured status requirement for receipt of SSI benefits. Kozaczka v. Schweiker, 520 F.Supp. 1189, 1193 (W.D.N.Y.1981). For a discussion of the differences between disability and SSI benefits, see Liebman, The Definition of Disability in Social

## II. The Merits

Difficulty in understanding and recognizing alcoholism as a disabling condition does not relieve the Secretary of the burden to review the record for evidence of a disability under applicable legal standards.[15] A finding of benefit ineligibility cannot stand where an improper legal standard is applied. Coria v. Heckler, 750 F.2d 245, 247–48 (3d Cir.1984).

In 1975, the Social Security Administration amended its regulations pertaining to alcoholism. These regulations provide that alcoholism is to be assessed like any other disability; that is, by its "symptoms, signs and laboratory findings." 20 C.F.R. § 404.1506(d) (1976) (now codified at 20 C.F.R. § 404.1508 (1984)). There is no requirement of end-organ damage or of any physical manifestation of mental illness apart from alcoholism itself. Compare 20 C.F.R. § 404.1506(d) (1976) with 20 C.F.R. § 404.1519(c)(2) (1967) (amended by 40 Fed. Reg. 30,262 (1975)) (classifying alcoholism as a "personality disorder," which could

Security and Supplemental Security Income: Drawing the Bounds of Social Welfare Estates, 89 Harv.L.Rev. 833, 840, 860 (1976). Therefore, the district court erred in failing to review the ALJ's decision on the merits of Purter's claim for SSI benefits. Since we find that claimant's third application was treated as a petition to reopen his earlier claims, the entire record as to both disability and SSI benefits must be reviewed on remand.

15. The inadequate treatment of alcoholism as a potentially debilitating impairment is due in part to the fact that this illness is not readily capable of diagnosis. As is true with any progressive disease, difficulties in proof of the onset of injury abound. Moreover, in the case of alcoholism, an individual's reluctance to admit and to deal with his condition may create a plethora of diagnosable symptoms seemingly unrelated to traditional notions of drunkenness—slurred speech and failure to walk in a straight line. Alcohol addiction may well be masked by other maladies whose symptoms are more readily admitted to by the patient and that are likely to surface before the actual cause of the condition is determined. For example, Purter complained of high blood pressure and seizure disorder. Because he focused his attention on these illnesses and refused to admit any alcohol problem, several physicians and the Social Security Administration limited their attention to his initially-claimed impairments.

not be the basis for finding of disability unless accompanied by "severe psychoneurosis or psychosis") and 20 C.F.R. subpt. P app. § 12.04(6) (stating that in order to recover benefits for alcoholism, claimant must show a habitual pattern of behavior manifested in addiction to alcohol with evidence of irreversible organ damage). This amendment is a reflection of the general shift away from society's traditional perception of alcoholism as a self-inflicted condition and towards a recognition that it is a disease often not subject to individual control. *See* Note, *Alcoholism as a Disability under the Social Security Act; Rutherford v. Schweiker*, 17 Ga.L.Rev. 217, 218–22 (1982).

In determining Purter's first application for benefits, the ALJ stated that a finding of disability based on alcoholism was not warranted because there was "no evidence of any liver or brain damage resulting from excessive alcohol abuse nor is there any indication of psychological and sociological overlays." (R at 138). This finding was made despite hospital records reflecting "chronic alcoholism," (R at 79–81, 88, 91–93, 103), and a physician's report that claimant's alcoholism was probably related to his seizure disorders. (R at 124).

Despite a thorough discussion of the quantum evidence before the ALJ, Purter's second application for benefits was denied

without a specific finding that Purter's alcoholism was not itself disabling. (R at 206–09). The ALJ avoided the issue by finding that *if* Purter's alcohol intake could be controlled, his other disorders, namely high blood pressure and seizures, could be adequately controlled by medication. (R at 205–06).

In denying both Purter's first and second applications, the Social Security Administration ignored its own amended regulations and adhered to its former position that alcoholism was not itself a disabling condition. This view is contrary to the regulations promulgated by the Secretary, *see* 20 C.F.R. § 404.1506(d) (1976), and cannot be sustained. *Adams v. Weinberger*, 548 F.2d 239, 242–43 (8th Cir.1977); *Griffis v. Weinberger*, 509 F.2d 837, 838 (9th Cir. 1975).

Prior to the decision of the ALJ denying Purter's third claim for benefits, this court addressed the issue of alcoholism as a compensable disability under the Act in *McShea v. Schweiker*, 700 F.2d 117, 118–19 (3d Cir.1983).[16] There, we held that alcoholism, either standing alone or combined with other causes, may constitute a compensable injury. *Id.* at 119.[17] Consistent with this position, we rejected the Secretary's adherence to her belief that alcoholism is a self-inflicted condition. We found as untenable the Secretary's position

**16.** We cannot help but note the factual similarity between the facts of the case presently before us and the facts presented to the panel in *McShea*. In *McShea*, the pertinent medical evidence, ignored by the ALJ, consisted primarily of the informed observations of hospital personnel contained in entries in McShea's hospital admission, diagnostic and discharge records. 700 F.2d at 118. The notations make constant reference to chronic alcohol abuse. *Id.* One hospital admission indicates a serious fall probably resulting from McShea's severe intoxication. *Id.* Further, although McShea admitted in 1976 to drinking a considerable amount of beer and whiskey on a per diem basis, he disclosed on examination in 1980 that he *"used to* be a heavy drinker." *Id.* (emphasis added). However, because there was no evidence of end-organ damage, these facts were ignored.

Purter's significant hospital records are replete with notations of chronic alcohol abuse. *See, e.g.*, (R at 79–80, 91–93, 103, 116). Purter was admitted to St. Francis for treatment of a

stab wound in 1977. (R at 109). The admission report indicates that he was found intoxicated. Although Purter once admitted his drinking problem. (R at 92), he subsequently brandished a more recalcitrant attitude in later years where he was confronted by physicians about his alcohol addiction. For example, he admitted to drinking a lot when his addiction was not suspect, but when confronted with his disease, he stated that he was not drinking any more. (R at 167, 326–29). Because there was no physical or psychological overlay associated with Purter's alcoholism, these salient facts were ignored by the Secretary. Thus, the facts facing the ALJ on review of Purter's third application were remarkably similar to those in *McShea*.

**17.** As we impliedly recognized earlier in this opinion, our position on this issue is not novel. It is consistent with the current regulations indicating that the Secretary is to evaluate alcoholism as it would any other claimed disability. *See Adams*, 548 F.2d at 243.

that its inquiry into the issue of alcoholism ends with medical evidence supporting a finding of "no objective physical impairment." Because a negative attitude towards admission of a tendency to drink heavily "is a common accompaniment of the disease of alcoholism," and because the disease is often masked by other disorders which are more readily diagnosable, we imposed an affirmative duty on the ALJ to inquire further and to develop a full and fair record wherever evidence of alcohol abuse is present in the record. *Id.* As stated by the Fourth Circuit in *Hicks v. Califano*, 600 F.2d 1048, 1051 (4th Cir. 1979), *cited in McShea*, 700 F.2d at 119, the relevant inquiry where there is evidence of alcoholism is not whether the claimant should be able to control his drinking problem or that he says that he can control it, but rather "whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use." *See also, Ferguson v. Heckler*, 750 F.2d 503, 505 (5th Cir.1985); *Adams*, 548 F.2d at 244. The issue of alcoholism, and its interrelationship with other impairments, must then be evaluated to determine whether the claimant can engage in substantial gainful activity.[18] *Ferguson*, 750 F.2d at 505; *Orr v. Heckler*, 737 F.2d 770, 771 (8th Cir.1984); *Hicks*, 600 F.2d at 1051. *See McShea*, 700 F.2d at 119.

■ It was against this legal framework that the ALJ should have tested Purter's third application for benefits. Purter supplemented his third application with evidence that he had unsuccessfully completed a hospital-sponsored detoxification program. (R at 331). Furthermore, the evidence included the report of an examining physician who concluded that Purter's seizure and hypertension impairments were causally related to his ingestion of alcohol. (R at 305). Despite the introduction of this material evidence, the ALJ concluded that none of Purter's conditions were disabling. The ALJ, in reviewing the evidence on the issue of alcoholism, found that claimant's ' alcoholism was not disabling because there was "no evidence of any liver or brain damage." Such a standard is contrary to the governing regulations and inapposite to our ruling in *McShea*.

■ This record indicates that the Secretary has consistently failed to evaluate Purter's condition under the proper legal standard. This case must therefore be remanded for additional fact-finding and a reassessment of the facts in light of the current regulations and the standards set forth in *McShea*.

■ On remand, the Secretary is admonished to review the entire record with close scrutiny. This court has previously noted the Secretary's consistent failure to develop an adequate record sufficient to support her findings. *Wier on Behalf of Wier v. Heckler*, 734 F.2d 955, 956–57 (3d Cir.1984). Under *McShea*, it is the duty of the Secretary to examine the underlying facts and not to view independent, administration-oriented tests in isolation from the volume of hospital records detailing eight years of treatment. *See* 700 F.2d at 118–19.[19] In this case, the records reveal that Purter did not have a treating physician *per se*. Rather he relied, as many people do, on hospital emergency room and out-patient clinics to treat his illnesses. *See, e.g.,*

**18.** In *McShea*, we discussed the scope of the ALJ's inquiry once evidence of alcohol abuse is discovered. However, we did not state that the ALJ should end his inquiry once he has decided whether the claimant is addicted to alcohol and, as a consequence, has lost the ability to control its use. 700 F.2d at 119. Taken in the context of our entire discussion of relevant precedent on the issue, the ALJ must then determine whether alcoholism, alone or in combination with other impairments, prevents the claimant from engaging in substantial gainful employment. See *id.* (quoting *Ferguson v. Schweiker*, 641 F.2d 243, 248 (5th Cir.1981), *later appealed*, 750 F.2d at 503). *See also* 20 C.F.R. § 404.1508 (1984) (alcoholism will be evaluated as any other disability).

**19.** The "underlying facts," as gathered from a thorough examination of the hospital records, were ignored by the Secretary in reviewing all three of Purter's applications. For example, Purter's admission records reflect the fact that he has been arrested five or six times for "public intoxication." (R at 335). This record also reflects that most of Purter's friends drink, "maybe that's why he keeps drinking." (R at 334). In support of his third application, Purter filed a disability report in which he stated, "I can't help the drinking." (R at 279). Purter's

(R at 273). These records are significant in detailing the medical history of this claimant. They are the functional equivalent to reports of a treating physician and, as such, must be given substantial weight. *See Wallace v. Secretary of Health and Human Services*, 722 F.2d 1150, 1155 (3d Cir.1983).

■ Further, the Secretary must not only determine whether Purter has lost the ability to control his addiction to alcohol, but also, how the evidence of alcoholism and its effects on his other impairments relates to his functional abilities. *See Mellon v. Heckler*, 739 F.2d 1382, 1383 (8th Cir.1984) (citing *Orr*, 737 F.2d at 771). It is not enough for the ALJ to simply find that claimant's impairments, when considered in combination, are not disabling without articulating the basis for his decision. *Wallace*, 722 F.2d at 1155 n. 8 (citing *Burnam v. Schweiker*, 682 F.2d 456, 457 (3d Cir. 1982)).

■ Finally, we direct the Secretary to examine the Secretary's regulations pertaining to certain contingencies upon which benefits may be conditioned.[20] In consideration of Purter's historic inability to complete successfully the prescribed regimen for detoxification,[21] we believe that such conditions are a proper method of ensuring that these benefits are applied to support

the claimant's need to overcome the addiction and not to further it. *See McShea*, 700 F.2d at 119.

Accordingly, we reverse the judgment of the district court and remand to the district court with directions to, in turn, remand to the Secretary for further proceedings in accordance with the instructions set forth in this opinion.

---

statements regarding his ability to stop drinking are, at a minimum, inconsistent. *Compare* (R at 167, 326) *with* (R at 79, 92, 326). At the third hearing before an ALJ, the claimant testified that "he needs a drink every day." (R at 44). Furthermore, both Purter and his significant other, Joanne Riley, stated that he was drinking while he attended Alcoholics Anonymous. (R at 46, 49).

While each of these statements or notations is not itself evidence that Purter has lost the ability to control his use of alcohol, this evidence must be given substantial weight in developing an adequate record on remand.

20. In *McShea*, we recommended that the Secretary employ practices similar to those used in the context of SSI. 700 F.2d at 120. For example, benefits may be made to a representative payee. 20 C.F.R. § 416.601(a)(2) (1984) (SSI benefits). In the instant case, claimant has designated his companion as representative payee for SSI benefits. (R at 250). While we express no opinion as to this choice of representation, we note that under SSI regulations, a represent-

ative payee may be an institution caring for claimant. 20 C.F.R. § 416.601(a)(2) (1984). This would seem particularly appropriate under the circumstances of this application.

21. Although we have noted Purter's past inability to successfully complete a program to cure his problems with alcohol abuse, we do not in any way imply that his condition is not remediable. *See Ferguson*, 750 F.2d at 506 (Gee, J., specially concurring) (suggesting that the alcoholic should be given the chance to recover by conditioning benefits on proper treatment). However, this history of failed recovery attempts is substantial evidence of his inability to control the use of alcohol. Furthermore, on remand, this evidence should be used in conjunction with the testimony of a vocational expert to determine whether his non-exertional impairments prevent him for obtaining any gainful employment. *See Mellon*, 739 F.2d at 1384.