**Josephine CARVER, Plaintiff–Appellant,**

v.

**SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant–Appellee.**

**No. 87–6182.**

United States Court of Appeals, Sixth Circuit.

Argued Oct. 4, 1988.

Decided March 9, 1989.

David T. Adams, Eau Claire, Mich., Stephen A. Sanders (argued), Appalachian Research and Defense Fund, Prestonsburg, Ky., for plaintiff-appellant.

Louis DeFalaise, U.S. Atty., Lexington, Ky., John S. Osborn, III, Peter M. Davenport (argued), Dennis R. Williams, Atlanta, Ga., for defendant-appellee.

Before KENNEDY and KRUPANSKY, Circuit Judges, and EDWARDS, Senior Circuit Judge.

KRUPANSKY, Circuit Judge.

This is an appeal by plaintiff-appellant, Josephine Carver (Carver), from the district court's decision in favor of defendant-appellee, Secretary of Health and Human Services (Secretary), who had determined her to be ineligible for social security widow benefits and required her to repay such benefits previously disbursed to her.

Carver was born on May 28, 1918, and was 62 years old at the time she applied for widow's benefits in 1980. On October 12, 1957, she married Beacher F. Meadows (Meadows), the insured worker. Prior to his marriage to Carver, Meadows had been married to Virginia Ann Meadows (Virginia) which ended in divorce in 1939. Meadows was determined to be at fault in bringing about the divorce and, consequently, was precluded from remarrying, pursuant to Georgia law.[1] At the time of her marriage to Meadows, Carver had no knowledge of his legal preclusion to remarry.

Meadows died in 1965, and on September 7, 1965 and August 19, 1969, Carver, *pro se*, applied for widow insurance benefits. On both occasions, Carver was denied benefits because the Secretary determined that Carver was not the legal spouse of Meadows under Georgia law. 20 C.F.R. § 404.345.[2] Additionally, the Secretary determined, on both occasions, that Carver did not qualify as the "good faith" wife of Meadows, because she was not living with him at the time of his death. 20 C.F.R. § 404.346.[3] Carver failed to pursue any further administrative proceedings with regard to these two applications.

On August 19, 1980, Carver again filed an application for widow insurance benefits. On her latest application, she disclaimed filing any prior application for benefits. As a result of this representation, the Secretary granted her application for

---

1. Georgia Code Ann. § 30–122, which was repealed in 1979, provided: Rights and disabilities. When a divorce shall be granted, the jury or the judge, as the case may be, shall determine the rights and disabilities of the parties. Provided, however, that no person shall be placed under disabilities unless there is in the pleadings a special prayer that he be placed under such disabilities. Ga.Laws 1979 Session, Vol. 1, p. 471.

2. 20 C.F.R. § 404.345 mandates that the Secretary look to the law of the State where the insured had a permanent home in order to determine whether the insured and his widow were legally married.

3. 20 C.F.R. § 404.346 permits a claimant to qualify for widow benefits if she cannot prove a legal marriage by establishing that (1) there was a ceremony in good faith; (2) the widow went to the ceremony in good faith; (3) she was living in the same household as the worker at the time of his death, and (4) there is no legal spouse who was entitled to the earnings record of the insured. It was determined that Carver was living with her mother at the time of Meadows's death due to her mother's health and marital problems with him.

widow's benefits and Carver received a total of $8,470 in benefits between August 1980 and April 1985.

Upon discovery of Carver's prior applications for widow benefits, the Secretary initiated a special review of Carver's status and on August 23, 1985, concluded that Carver withheld material information that would have caused the Secretary to deny her benefits. Consequently, the Secretary terminated payment of her widow's insurance benefits effective August 1980 and assessed an overpayment of $8,527.70 against her pursuant to 20 C.F.R. § 404.988(c).

On September 30, 1985, Carver requested a hearing before an ALJ which was subsequently held on April 22, 1986. On May 28, 1986, the ALJ determined that, under Georgia law existing at the time of the Carver–Meadows marriage, Meadows had been precluded from remarrying. Consequently, the ALJ concluded that the marriage was invalid. The ALJ did not address the constitutional claim joined by Carver charging that the Georgia law infringed her constitutional right to marry. The ALJ also concluded that since Carver had not been living with Meadows at the time of his death, she failed to qualify for benefits under the "good faith exception" pursuant to 20 C.F.R. § 404.346.

The ALJ also determined that Carver had been erroneously paid $8,470.70 during August 1980 through August 1985 and that the amount could not be waived because Carver had induced the payments by failing to disclose, on her 1980 application, her previous 1965 and 1969 applications for benefits. The Appeals Council denied Carver's request for review, and consequently, the ALJ's decision became the "final decision" of the Secretary on September 19, 1986.

Pursuant to 42 U.S.C. § 405(g), Carver initiated this action in district court seeking a review of the ALJ's decision. On August 28, 1987, the district court granted summary judgment in favor of the Secretary concluding that Carver's previous two applications for widow's insurance benefits, which determined that Carver had not been legally married to Meadows under Georgia law, barred the instant application by reason of administrative res judicata. Additionally, the district court determined that there was substantial evidence to support the ALJ's decision that Carver was not living with Meadows at the time of his death and that Carver was at fault for not disclosing her prior two applications for benefits. Carver thereafter commenced this timely appeal.

On appeal, Carver argued that the district court erred in upholding the Secretary's decision to terminate her widow benefits and mandate the repayment of benefits already disbursed. Carver contended that the Georgia law which prohibited her husband from remarrying was unconstitutional. Consequently, Carver asserted that since she had joined a colorable constitutional issue in her appeal from the decision of the Secretary terminating her benefits awarded as a result of her last application filed in 1980, the Secretary and the district court erred in arresting her benefits by invoking the doctrine of administrative res judicata.

42 U.S.C. § 405(h) provides that "the findings and decision of the Secretary after a hearing shall be binding upon all individuals who were parties to such hearing." Additionally, the Secretary's regulation, 20 C.F.R. § 404.921, provides that the Secretary's initial determinations of claimant's eligibility for benefits are to be given preclusive effect in the consideration of subsequent applications for benefits with the identical facts and issues. As a result, a claimant's subsequent application for benefits may be barred by the application of "the doctrine of *res judicata* [when the Secretary has] made a previous determination or decision ... about [the claimant's] rights on the same facts and on the same issue or issues, and this previous determination or decision has become final by either administrative or judicial action." 20 C.F.R. § 404.957(c)(1). *See Graham v. Bowen,* 786 F.2d 1113 (11th Cir.1986) (denial of benefits initially and on reconsideration by the Secretary are final and may act as res judicata on subsequent applications);

*McGowen v. Harris,* 666 F.2d 60, 65 (4th Cir.1981) ("[a]n earlier administrative decision at any level in the adjudicative process may be final and therefore properly treated as preclusive of a subsequent claim ... because ... judicial review has not been timely sought.") *See also Wilson v. Califano,* 580 F.2d 208 (6th Cir.1978) (res judicata applies to findings of an ALJ).

The courts have consistently upheld the imposition of the doctrine of administrative res judicata in social security cases except under circumstances that implicate a colorable constitutional issue. *Califano v. Sanders,* 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976).

> Constitutional questions obviously are unsuited to resolution in administrative hearing procedures and, therefore, access to the courts is essential to the decision of such questions ... [W]hen constitutional questions are in issue, the availability of judicial review is presumed, and we will not read a statutory scheme to take the "extraordinary" step of foreclosing jurisdiction unless Congress' intent to do so is manifested by "clear and convincing" evidence.

*Sanders,* 430 U.S. at 109, 97 S.Ct. at 986. *See also Bullyan v. Heckler,* 787 F.2d 417 (8th Cir.1986) (res judicata was improper where a constitutional issue was presented); *McGowen,* 666 F.2d at 65 (same); *Graham,* 786 F.2d at 1114 (same); *Shrader v. Harris,* 631 F.2d 297 (4th Cir.1980) (claimant's charge of denial of due process prohibited res judicata from barring reconsideration of his denial of social security benefits even though he had previously been denied benefits and failed to request a review of that decision). "[W]hen *res judicata* is applied in the context of administrative proceedings under the [Social Security] Act, it is not encrusted with the rigid finality that characterizes its application in purely judicial proceedings." *Purter v. Heckler,* 771 F.2d 682, 691 (3d Cir.1985).

The doctrine of res judicata accordingly does not foreclose Carver from interposing a constitutional challenge against the Geor-gia statute in her instant application for benefits even though she did not do so in her initial applications filed in 1965 and 1969 since the Supreme Court did not clearly address or resolve the constitutional right of an individual to marry until 1978. In *Meyer v. Nebraska,* 262 U.S. 390, 43 S.Ct. 625, 67 L.Ed. 1042 (1923) the Supreme Court first suggested, in dicta, that the right to marry was embodied in the concept of liberty which no person may be deprived without due process of law under the Fourteenth Amendment. Thereafter, in *Loving v. Virginia,* 388 U.S. 1, 87 S.Ct. 1817, 18 L.Ed.2d 1010 (1967), the Supreme Court struck down a Virginia statute prohibiting interracial marriage as unconstitutional. The *Meyer* and *Loving* decisions, however, did not clearly foreshadow that an individual had a constitutionally protected right to marry. That right was not firmly established until the Supreme Court's decision in *Zablocki v. Redhail,* 434 U.S. 374, 98 S.Ct. 673, 54 L.Ed.2d 618 (1978).

In *Zablocki,* the Court concluded that a Wisconsin statute was unconstitutional because it prohibited a person from remarrying without court approval. The statute was intended to ensure that divorced individuals would be able to meet their child support obligations stemming from the previous marriage. The Court determined that "the right to marry is of fundamental importance." *Zablocki,* 434 U.S. at 383, 98 S.Ct. at 679. Consequently, the court applied the strict scrutiny standard and determined the statute to be unconstitutional.

In the case at bar, Carver was denied widow benefits in 1965 and 1969 because the Secretary determined that Carver was not the legal spouse of Meadows under Georgia law which had precluded Meadows from remarrying because he was determined to be at fault in the divorce stemming from his prior marriage. Georgia Code Ann. § 30–122 (repealed in 1979). Since the Supreme Court's decision in *Loving* did not clearly adumbrate an individual's constitutionally protected right to marry, Carver could not have anticipated raising this constitutional challenge against the Georgia statute in her prior applications for

widow benefits. It was not until *Zablocki* in 1978 that the right to marriage was firmly established. Consequently, the district court improperly barred Carver's instant application for benefits by the doctrine of administrative res judicata.

Accordingly, the judgment of the district court is REVERSED and REMANDED with instructions to expeditiously determine the constitutionality of Georgia Code Ann. § 30–122 after due notice to the appropriate State of Georgia authorities to intervene.