921 F.2d 276
 Unpublished Disposition
NOTICE: Sixth Circuit Rule 24(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Sixth Circuit.
Judy FITZGERALD, Plaintiff-Appellant,
v.
SECRETARY OF HEALTH AND HUMAN SERVICES, Defendant-Appellee.
 No. 90-5007.
 United States Court of Appeals, Sixth Circuit.
 Dec. 4, 1990.
 
 Before KENNEDY and KRUPANSKY, Circuit Judges, and LIVELY, Senior Circuit Judge.
 PER CURIAM.
 
 
 1
 The plaintiff, Judy Fitzgerald, appeals from a judgment of the district court affirming the Secretary's denial of her application for Social Security disability benefits. Finding that the Secretary misapplied res judicata principles to narrow Mrs. Fitzgerald's period of eligibility, we reverse and remand for further proceedings.
 
 I.
 
 2
 Mrs. Fitzgerald was born in 1951, has a college education and has worked in the past as a school teacher and as a waitress. She filed the present application for benefits in January 1986, stating that she had been unable to engage in gainful employment since March 1978 because of morbid obesity, lymphedema (swelling of body tissue) and elephantitis of the lower extremities and cellulitis (swelling of cellular tissue). When examined at the University of Kentucky Medical Center on May 10, 1978, Mrs. Fitzgerald weighed 301 pounds. An examination at the medical center on March 20, 1979, listed her height as 5 feet 7 inches and her weight as 320 pounds. At the hearing on December 3, 1986, Mrs. Fitzgerald weighed 302 pounds on the scales in the ALJ's office.
 
 
 3
 Mrs. Fitzgerald was last insured for disability purposes on September 30, 1981. She testified that during the period from March 1978 to September 1981 her cellulitis flared up approximately eight times per year and that she required bed rest for five to ten days per occurrence.
 
 
 4
 A surgeon at the University of Kentucky Medical Center established a treatment plan for Mrs. Fitzgerald on September 27, 1978. He noted that during a recent hospitalization the size of the patient's legs had decreased significantly in response to "Jobst pumping." However, a trial of Jobst stockings was unsuccessful because "the edema nearly exploded the stockings." The plan required Mrs. Fitzgerald to try a Jobst pump at home for several weeks, pumping her legs for three or four hours per evening. The doctor also noted that a surgical procedure likely would be required, but he wanted to make sure that Mrs. Fitzgerald was able and willing to spend sufficient time taking care of herself so as not to render such a procedure fruitless.
 
 
 5
 In a follow-up notation three months later the surgeon found that the treatment had failed and that Mrs. Fitzgerald had not made effective use of the pump. Mrs. Fitzgerald then underwent two gastric by-pass operations, one in March 1979 and the other in January 1981. Although her weight fell to 207 pounds by September 1981, eight months after the second operation, the improvement was temporary. As noted, Mrs. Fitzgerald weighed 302 pounds at the time of the hearing. She testified that the by-pass operation did not help the lymphedema in her legs. The swelling went down a little immediately after the operations, but as soon as she started moving around again the swelling increased "and they started to get bigger and bigger." In addition, there were post-operative complications, and nerve blocks were required after both by-passes to relieve pain in the upper ribs. Medical Center records support the testimony that the lymphedema persisted even after the two surgical procedures had produced some weight loss.
 
 II.
 
 6
 Mrs. Fitzgerald has filed three applications for disability benefits. The first, filed in May 1981, was denied in mid-June 1981 according to a "Disability Determination and Transmittal" filed in the record. Mrs. Fitzgerald filed the second application in 1983, claiming an onset of disability in 1982. This application received a "technical denial" because her insured status had expired before the claimed onset date. Mrs. Fitzgerald testified that she received notice of the denial of her second application, but denied receiving notice of the denial of her 1981 application. Both the ALJ and the district court found that she testified that she was notified and was aware that her 1981 application was denied. This finding is clearly erroneous; the transcript shows only that she acknowledged notice of the 1983 denial.
 
 
 7
 Because Mrs. Fitzgerald did not appeal the denial of her 1981 application, the ALJ held that the denial was a final determination that she was not disabled prior to June 1981 and that the determination was res judicata as to that question. As her insured status expired September 30, 1981, the ALJ held that in order to be eligible for benefits under the present (third) application she was required to prove that she was disabled within the three month period June-September 1981. Thus, he did not consider her condition prior to June 1981. Although he concluded that Mrs. Fitzgerald could not return to either of her previous jobs, since both required prolonged standing and walking, the ALJ found that she had the residual functional capacity "to perform the full range of at least sedentary work." Upon finding that Mrs. Fitzgerald had no non-exertional limitations, he applied the "grid"; because she had this residual functional capacity, the grid directed a finding of "not disabled." All his findings and conclusions related only to the three month period in 1981.
 
 
 8
 Mrs. Fitzgerald filed objections to the ALJ's decision and requested the Appeals Council to overrule it, particularly on the basis of a misapplication of res judicata principles. She pointed out that her 1981 application was not of record and that she received no notice of the alleged denial. There was no hearing on her 1981 application, and there is no record of the exact nature of the 1981 claims or of the medical evidence reviewed in connection with that application.
 
 
 9
 In denying review of the ALJ's decision, the Appeals Council agreed that the 1981 application was not of record and that Mrs. Fitzgerald had no opportunity to review it or challenge it as the basis for a res judicata determination. Nevertheless, the Appeals Council stated that its records showed that a notice of denial of the 1981 application had been sent to Mrs. Fitzgerald. The record contains no such notice. Further, although no documents referred to by the Appeals Council included the medical evidence on which the 1981 determination was based, the Appeals Council concluded "that this evidence merely documents the basis for res judicata."
 
 
 10
 The district court adopted the magistrate's determination that Mrs. Fitzgerald met the requirements of Sec. 10.10 of the Listing of Impairments in March 1979, but agreed with the Secretary that the 1981 denial was res judicata as to the 1986 application. Thus, the determination that Mrs. Fitzgerald met the requirements for a finding of disabled in 1979 could not provide the basis for an award of benefits under the 1986 application. Considering only the period from mid-June 1981 through September 30, 1981, the district court held that the Secretary's decision to deny benefits was supported by substantial evidence.
 
 III.
 
 11
 An ALJ may apply res judicata to a claim for disability benefits. 20 C.F.R. Sec. 404.957. There are two requirements that must be satisfied, however: (1) there must have been a previous determination on the same facts and on the same issues; and (2) the previous determination must have become final by either administrative or judicial action. 20 C.F.R. Sec. 404.957(c)(1).
 
 
 12
 The record before the ALJ in the present case contained no documentation of the facts and issues in the 1981 proceedings. One paragraph in form SSA-831 U5 Disability Determination and Transmittal--an interagency document--indicates that the 1981 denial was based on examinations of the claimant in February and May of 1981 which showed a reduction of Mrs. Fitzgerald's weight and some improvement in the painful condition in her rib area following the gastric by-passes. This document contains no reference to lymphedema and cellulitis or elephantitis in the lower extremities.
 
 
 13
 The regulations contain four provisions that govern the finality of administrative action by virtue of a claimant's failure to appeal. 20 C.F.R. Sec. 404.904 provides:
 
 
 14
 We shall mail a written notice of the initial determination to you at your last known address. The reasons for the initial determination and the effect of the initial determination will be stated in the notice. The notice also informs you of the right to a reconsideration.
 
 20 C.F.R. Sec. 404.905 provides:
 
 15
 An initial determination is binding unless you request a reconsideration within the stated time period ...
 
 20 C.F.R. Sec. 404.900(b) provides:
 
 16
 If you are dissatisfied with our decision in the review process, but do not take the next step within the stated time period, you will lose your right to further administrative review and your right to judicial review, unless you can show us that there was good cause for your failure to make a timely request for review.
 
 
 17
 Finally, 20 C.F.R. Sec. 404.911 describes circumstances constituting "good cause" for missing a deadline to request review:
 
 
 18
 (b) Examples of circumstances where good cause may exist include, but are not limited to, the following situations: ...
 
 
 19
 (6) We gave you incorrect or incomplete information about when and how to request administrative review or to file a civil suit.
 
 
 20
 (7) You did not receive notice of the determination or decision.
 
 
 21
 Even accepting the Secretary's assertion, based on a presumption of administrative regularity, that form SSA-831 U5 was sent to Mrs. Fitzgerald, that document would not satisfy the regulations' requirements for finality. It neither informs the claimant of the effect of the initial determination nor advises of the right to reconsideration as required by 20 C.F.R. Sec. 404.904. In addition, the form does not state the period in which action must be taken--a requirement of 20 C.F.R. Sec. 404.900(b). Thus, even if this form was sent to Mrs. Fitzgerald, its deficiencies are included in those specifically listed among examples of situations in which "good cause" exists for missing a deadline. 20 C.F.R. Sec. 409.911(b)(6). Moreover, we cannot accept the Secretary's argument that the presence of Form SSA-831 U5 in the record requires a presumption that a different form, which did not provide adequate notice to Mrs. Fitzgerald but which is not in the record, was ever mailed.
 
 
 22
 Incidentally, the record does contain the notice to Mrs. Fitzgerald of the denial of her 1986 claim. It is not on form SSA-831 U5. Rather, it is on form SSA-L443 U2, which complies with all the notice regulations.
 
 IV.
 
 23
 This court follows the rule that "when res judicata is applied in the context of administrative proceedings under the [Social Security] Act, it is not encrusted with the rigid finality that characterizes its application in purely judicial proceedings." See Carver v. Secretary of Health and Human Services, 869 F.2d 289, 292 (6th Cir.1989), quoting Purker v. Heckler, 771 F.2d 682, 691 (3d Cir.1985).
 
 
 24
 We conclude that the ALJ, the Secretary and the district court erroneously held on this record that the 1981 denial should be given res judicata effect, foreclosing consideration of Mrs. Fitzgerald's condition prior to June 1981. The record fails to establish the facts considered and the issues resolved in the 1981 determination. This deficiency and the inadequacy of any attempt to notify Mrs. Fitzgerald of the effect of denial and of her rights to reconsideration precluded treating the 1981 decision as a final determination.
 
 
 25
 The Secretary argues that the question of whether to reopen a decision is entrusted to his discretion. Given our conclusion that the 1981 decision never became final, there is no issue of reopening.
 
 
 26
 The judgment of the district court is reversed. The case is remanded to the district court with directions to remand it to the Secretary for further proceedings before a different ALJ to determine the facts and issues involved in the 1981 proceedings and whether notice of denial of the 1981 application, sufficient to satisfy the regulations quoted herein, was sent to Mrs. Fitzgerald. On the basis of the record so made, the ALJ will determine whether res judicata applies or whether Mrs. Fitzgerald is entitled to a determination of her claim of disability on the basis of the medical evidence covering the entire period of her claim rather than that of the three-month period considered previously.