George **TRENTINI**, Plaintiff,

v.

Louis W. **SULLIVAN**, M.D., Secretary of Health and Human Services, Defendant.

Civ. A. No. 89–68J.

United States District Court, W.D. Pennsylvania.

Dec. 28, 1989.

Cynthia Berger, Pittsburgh, Pa., for plaintiff.

Amy Reynolds Hay, Asst. U.S. Atty., for defendant.

## OPINION

D. BROOKS SMITH, District Judge.

Plaintiff George Trentini brings this action under sections 205(g) and 1631(c)(3) of the Social Security Act, as amended, 42 U.S.C. §§ 405(g) and 1383(c)(3), to review a final determination of the Secretary of Health and Human Services denying his application for disability insurance benefits and supplemental security income benefits based on disability. Both parties have moved for summary judgment pursuant to Fed.R.Civ.P. 56(e). For the reasons stated in this opinion, defendant's motion is granted and plaintiff's motion is denied.

Plaintiff most recently applied for Disability Insurance Benefits and Supplemental Security Income Benefits on February 22, 1988, claiming disability due to a slipped disc in his lower back, removal of cartilage from his right knee and a broken jaw.[1] Plaintiff alleges he was unable to perform substantial gainful activity as of June 15, 1984. Certified Transcript ("Tr.")

---

1. Plaintiff applied for Disability Insurance Benefits on May 31, 1979, claiming disability of his back, left side, leg and neck which prevented any lifting. Certified Transcript ("Tr.") of the administrative record at 89–92. His claim was denied on July 24, 1979. (Tr. at 93). Plaintiff reapplied for Disability Insurance Benefits and for Supplemental Security Income Benefits on November 19, 1985, this time claiming disability of his back, leg and neck resulting from an auto accident as well as alcoholism. (Tr. at 94–97, 100–09). His claims were denied on February 5, 1986 (Tr. at 110–114), and again upon reconsideration in or about May, 1986. (Tr. at 117–21). Thereafter, plaintiff requested a hearing (Tr. at 122–23) which was held on February 18, 1987 (Tr. 25–52) before Administrative Law Judge Thomas P. Bryan, Jr. Bryan denied plaintiff's claim in June, 1987, on the basis that despite his physical problems, plaintiff could perform a full range of sedentary work. (Tr. at 305–16).

of the administrative record at 340–43. His claim was denied initially on March 12, 1988, (Tr. at 344–46) and again upon reconsideration on May 23, 1988 (Tr. at 349–50). Thereafter, plaintiff requested a hearing (Tr. at 351–52) which was held on September 6, 1988 (Tr. 53–86) before Administrative Law Judge Gerald Spitz ("ALJ"). The ALJ denied plaintiff's claim on September 30, 1988 (Tr. at 8–15), determining that the findings and conclusions contained in the previous Hearing Decision of June, 1987, by ALJ Bryan were binding and conclusive with respect to any claim of disability before that date, and that plaintiff had a residual functional capacity as of September 30, 1988, to perform full range of sedentary work. (Tr. at 14–15). Plaintiff then requested a review by the Appeals Council (Tr. at 5–6). That request was denied on February 22, 1989 (Tr. at 3–4), rendering the ALJ's decision the final decision of the Secretary.

Plaintiff seeks a review of the Secretary's final decision pursuant to Section 205(g) of the Act, as amended, 42 U.S.C. § 405(g). Our review is limited to a determination of whether the Secretary's findings are supported by substantial evidence. *Id.* Findings supported by substantial evidence are conclusive, where substantial evidence is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales,* 402 U.S. 389, 401, 91 S.Ct. 1420, 1427, 28 L.Ed.2d 842 (1981) (quoting *Consolidated Edison Co. v. N.L.R.B.,* 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938)). Absent substantial evidence to support the findings, we may modify, remand or reverse the Secretary's decision. 42 U.S.C. § 405(g).

Plaintiff is a male who was 44 years old at the time of the ALJ hearing. Plaintiff applied for benefits on the basis of back and knee injuries as well as a broken jaw. (Tr. at 340). The substance of plaintiff's claim is that he is disabled from back, knee and neck injuries arising from an auto acci-

dent which occurred in 1965. (Tr. at 66–69).

Our review of the ALJ's decision follows the sequential analysis set forth in the Social Security Regulations. *See* 20 C.F.R. § 416.920. This analysis establishes a framework for determining whether an individual is disabled according to the regulations. The first inquiry is whether the plaintiff is performing any substantial gainful activity. If so, the plaintiff is not disabled and the inquiry is concluded. 20 C.F.R. § 416.920(b). If not, the next step scrutinizes whether an individual has a severe impairment.

A severe impairment may be established by showing that one is unable to perform basic work activities, or by demonstrating that the plaintiff's physical and/or mental conditions meet the criteria of a listing in the appendix of impairments. *See* 20 C.F.R. Part 404, Subpart P, Appendix 1 (hereinafter Appendix 1). If an individual's condition satisfies the requirements of a listed impairment, the plaintiff is automatically determined to be disabled and benefits are awarded. 20 C.F.R. § 416.920(c), (d).

If a plaintiff's impairment, though severe, fails to satisfy the criteria of a listed impairment, the individual must prove he is unable to perform past relevant work. If the plaintiff satisfies this burden of proof, then the Secretary must show that the individual has the residual functional capacity to do other work. 20 C.F.R. § 416.920(e), (f).

In the instant case, the plaintiff has not performed any substantial gainful activity since May, 1984. (Tr. at 65). Therefore, the plaintiff's impairments had to be assessed to determine if they were severe. Plaintiff's application for benefits alleged a disability on the basis of a slipped disc in the lower back, removed cartilage from the right knee and a broken jaw. (Tr. at 340). We address the manifestations of plaintiff's alleged lower back impairment first.[2]

---

**2.** Plaintiff does not dispute either the propriety of the Secretary's refusal to reopen his previous claim for benefits or the Secretary's deference to the findings and conclusions of ALJ Bryan; rather, plaintiff submits that it is his condition on or after June 10, 1987, which is the subject of

Plaintiff testified that he had suffered pain in his back since 1965, when he was injured in an auto accident. (Tr. at 66). Medication prescribed for this condition in the past included muscle relaxants and Percocet (Tr. at 77, 84); in September, 1988, plaintiff was treating with Tylenol # 4. (Tr. at 71). Plaintiff testified that he had pain in his back, left side and left leg. (Tr. at 67). The pain is precipitated, according to the plaintiff, by sitting or standing in one position for too long. (Tr. at 76–77).

Plaintiff's medical records reveal a diagnosis of a herniated disc at the L4–5 level in or before March, 1988. (Tr. at 392). Plaintiff, however, had no sensory, reflex or motor loss or restrictions in his range of motion at that time. (Tr. at 396). In February, 1988, plaintiff visited the Veteran's Administration pain clinic. (Tr. at 414). Tens unit treatment was prescribed and he was given a prescription for Halcion. A return visit was recommended in three to four weeks. In April and May, 1988, plaintiff received treatment for pain at the Veteran's Administration Hospital. (Tr. at 403–04). He was given a prescription for amitriptyline and darvocet, respectively, for pain in his lower back radiating to his left leg. In March, 1, Raschid Awan, M.D. (plaintiff's treating physician since April, 1987), reported that plaintiff had a herniated disc which was giving plaintiff "a lot (sic) of symptoms". (Tr. 392). Awan reported plaintiff's symptoms as chronic low back pain and stiffness with pain radiating down the left leg. (Tr. at 392).

Although the plaintiff's lower back symptoms limit his ability to do basic work activities, the plaintiff fails to meet the criteria of any of the muscular skeletal system's listed impairments. *See* § 1.05 of Appendix 1. In short, the plaintiff fails to satisfy the criteria of the listed impairments because his condition is one of only mild, if any, limitation. The listed impairments pertaining to disorders of the spine in Appendix 1 require pain, muscle spasm, and significant limitation of motion in the spine as well as appropriate radicular distribution of significant motor loss with muscle weakness and sensory and reflex loss. Appendix 1, § 1.05(C)(1) and (2) (1988). In the instant case, the record is devoid of evidence pertaining to a significant limitation or to significant motor, sensory or reflex loss. Instead, plaintiff's treating physician, Dr. Awan, reported that plaintiff suffered no gait abnormalities, that he required no assisting device for ambulation, and that he has only a 10 degree range of motion limitation of the lumbar spine. Dr. Awan denied that plaintiff had any sensory, reflex or motor loss. (Tr. at 396). We conclude that the ALJ's determination that the plaintiff failed to satisfy the listed impairments pertaining to spinal disorders is supported by substantial evidence.

■ Next, we turn to whether the plaintiff's alleged knee impairment satisfies the listings in Appendix 1. During the plaintiff's hearing before the ALJ, the plaintiff testified that he experiences pain in his right knee and that he suffers from "calcium build up." (Tr. at 67–68). Plaintiff further testified that he can walk for twenty minutes at a time (Tr. at 71), that he can lift twenty pounds (Tr. at 72), and that he can negotiate wooded terrain in order to hunt for sport. (Tr. at 70).

The ALJ concluded that the plaintiff failed to establish "gross anatomical deformity with either significant joint space narrowing or significant bony destruction, markedly limited ability to walk and stand, reconstructive surgery, or surgical arthrodesis" as required Section 1.03. (Tr. at 11). The report of plaintiff's treating physician, Dr. Awan, is consistent with the ALJ's findings; therefore, we conclude that the ALJ's decision is supported by substantial

---

this appeal. Plaintiff's Brief In Support of Motion for Summary Judgment at 3. ALJ Spitz applied the June, 1987 decision as *res judicata* to plaintiff's disability claims arising from his neck and back in or before June, 1987. We have no jurisdiction to conduct a de novo review of plaintiff's previously adjudicated claim.

*Rogerson v. Secretary Health and Human Services*, 872 F.2d 24, 28–29 (3d Cir.1989); *Purter v. Heckler*, 771 F.2d 682, 692 (3d Cir.1985); however, because the knee issue is a new one, we will examine the entire record with respect to plaintiff's claim of disability due to his right knee ailments.

evidence. Plaintiff's knee impairments do not limit his activities of daily living.

■ Finally, plaintiff testified that he suffered headaches, "cracking" and discomfort arising from his old jaw injury. (Tr. at 68–69, 74–75). ALJ Spitz concluded that no evidence of record supports a finding of significant pathology in connection with plaintiff's headaches. (Tr. at 13). Spitz also found that plaintiff's history of a broken jaw and resultant temporal headaches did not meet the standards of listing level severity. (Tr. at 11). Our review of the record indicates that ALJ Bryan concluded that plaintiff's neck and jaw discomfort singly and/or collectively with his other injuries, did not constitute an impairment under the regulations. (Tr. at 313). There was no medical evidence of further jaw injury or of treatment for headaches produced by plaintiff in the hearing before ALJ Spitz. Therefore, we find that plaintiff has failed to establish total disability arising from his jaw/neck problems.

■ Inasmuch as the plaintiff has failed to satisfy the requirements of any of the listed impairments, he is not automatically disabled. We therefore must determine whether the plaintiff is capable of performing his past relevant work. In the instant case, the plaintiff has job experience as a laborer and a furnace helper. (Tr. at 32, 44). The ALJ concluded that the plaintiff had impairments which compromise his ability to perform basic work-related activities. (Tr. at 11). This finding is consistent with ALJ Bryan's finding in June, 1987, that plaintiff could not perform his past relevant work as a laborer. (Tr. at 313). There is no evidence of record to contradict this finding; therefore, we conclude that the ALJ's findings regarding plaintiff's ability to do basic work activities is consistent with the regulations which define a

severe impairment as one which limits one's ability to do basic work activities. 20 CFR § 404.1521.

Therefore, the Secretary must satisfy the burden of proving that "the claimant, given [his] age, education and work experience, has the capacity to perform, specific jobs that exist in the national economy." *Rossi v. Califano*, 602 F.2d 55, 57 (3d Cir.1979).

To determine whether the plaintiff is capable of performing other work in the national economy, the ALJ had to determine what type of work he was capable of performing. ALJ Bryan previously concluded that plaintiff had the capacity to perform a wide range of unskilled sedentary work (Tr. at 314). Similarly, ALJ Spitz concluded that plaintiff could perform a full range of sedentary jobs. (Tr. at 13).

Once the ALJ determines the level of work that a plaintiff is capable of performing in conjunction with that individual's education and work experience, the ALJ can utilize the Grids of Appendix 2 to determine whether the plaintiff is disabled. *See* 20 C.F.R. Part 404, Subpart P, Appendix 2, Section 200.00(d) (hereinafter "Appendix 2"). In the instant case, the ALJ considered whether the plaintiff's strength limitations alone would direct a finding of disabled.[3] Looking to Table No. 1 of Appendix 2, for guidance, ALJ Spitz concluded that a literate, younger individual, with a capacity for sedentary work and with unskilled previous work experience is not disabled. Appendix 2, Table No. 1, Rule 201.24. The ALJ then proceeded to apply the grids to the plaintiff's specific vocational profile, and concluded that Section 202.-17 of the grids of Appendix 2, Table No. 2 directs a finding that the plaintiff is not disabled.

The ALJ found that plaintiff can perform a full range of sedentary work, without

3. Plaintiff's February, 1988 application for benefits was based only on alleged strength limitations, although a previous application and determination had included a nonexertional disability claim. ALJ Bryan previously had determined that the plaintiff had non-exertional limitations which precluded him from interacting closely with co-workers, supervisors or the public, and accordingly, that the plaintiff is limited essen-

tially to unskilled work. (Tr. at 314). ALJ Spitz considered the possibility that plaintiff suffered any mental limitations, even though no such claim formally was set forth. (Tr. at 13). ALJ Spitz determined that plaintiff suffered no significant non-exertional claims which would affect his ability to perform a full range of sedentary work (Tr. at 13).

limitation. (Tr. at 13). Section 202.00(a) of Appendix 2 indicates that approximately 1600 separate sedentary and light, unskilled occupations exist, each representing numerous jobs in the national economy which plaintiff can perform. Hence, the ALJ's conclusion that the plaintiff was capable of doing other work available in the national economy is reasonable. Therefore, he is not disabled.

We conclude that the ALJ's determination is supported by substantial evidence. The ALJ carefully reviewed the record of the plaintiff, and considered the fact that the plaintiff had a physical impairment. The ALJ then used Appendix 2 as a framework in determining that the plaintiff was not disabled. In short, the ALJ carefully scrutinized the record of the plaintiff. The record is devoid of any evidence which would support the fact that the plaintiff has a greater physical limitation than that determined by the ALJ. In the instant case, the ALJ has considered all of the evidence in the record, and that evidence supports the ALJ's conclusion that the plaintiff is not disabled. We will affirm the ALJ's denial of benefits to the plaintiff.

■ We recognize that the plaintiff argues that the ALJ improperly used the grids of Appendix 2 because plaintiff complains of severe pain and stiffness, which are non-exertional impairments. Plaintiff's Brief in Support of Motion for Summary Judgment at 13–14. ALJ Spitz found plaintiff's claim of total disability not credible on the basis of objective medical findings, the plaintiff's testimony as to his range of activities and his appearance and demeanor at the hearing. (Tr. at 14). In particular, the ALJ looked to plaintiff's own testimony that he can lift 20 pounds, that he lives by himself and does his own housework, that he cares for pets including dogs, and that he can watch TV and sit in a recliner for a couple of hours comfortably and probably falling asleep, and that he continues to

hunt for sport during which he spends time sitting on a log. (Tr. at 12, 58, 69–72, 75–76). Unlike *Green v. Schweiker*, 749 F.2d 1066 (3d Cir.1984), cited by plaintiff, in this case the ALJ did not reject plaintiff's allegations of pain in a conclusory fashion and merely on the basis of lack of credibility.[4] Instead, the ALJ found, with the help of plaintiff's testimony, that the pain in question did not reach the level of severity necessary to constitute an impairment. While we agree that plaintiff has presented objective medical evidence of a herniated disc which could reasonably be expected to produce symptoms of pain, 20 C.F.R. § 416.929 (1988), we also find that plaintiff's own testimony rebutted any claim that the pain was a significant non-exertional imp  Our Court of Appeals has approved the use of the grids to determine work capabilities absent significant non-exertional impairments. *Green v. Schweiker*, 749 F.2d at 1071.

For the foregoing reasons, the decision of the Secretary is affirmed and summary judgment is granted in favor of defendant.

---

**4.** We note that plaintiff's testimony, when compared with the record, raises serious credibility issues. For instance, plaintiff testified that he was fired for missing work due to his pain. Upon further inquiry, he testified that pain had prohibited him from resting at night, and that

as a result he did not get to work on time in the morning. (Tr. at 64–65). On the other hand, plaintiff reported to an examining psychiatrist, Dr. Rajan, that excessive drug and alcohol use contributed to the absenteeism which led to his firing. (Tr. at 236).